2015 COA 51

**Jonathon R. NAGL, Petitioner,**

**v.**

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Destination Vail Hotel, Inc., Respondents.**

**Court of Appeals No. 14CA1636**

Colorado Court of Appeals,
Div. IV.

Announced April 23, 2015

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2014.

Bryan Cave, LLP, Richard L. Nagl, Colorado Springs, Colorado, for Petitioner.

No Appearance for Respondents.

Opinion by CHIEF JUDGE LOEB

¶ 1 In this unemployment compensation case, petitioner, Jonathan R. Nagl (claimant), seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming the hearing officer's decision disqualifying him from unemployment benefits based on earnings from a previous employer under section 8–73–108(5)(e)(IV), C.R.S. 2014 (quitting to move to another area as a matter of personal preference). He also asserts that the hearing officer's application of that statutory section violated his constitutional right to travel. We affirm, and perceive no violation of claimant's constitutional rights.

## I. Background

¶ 2 Claimant worked as a front desk agent for Destination Vail Hotel, Inc. He quit this employment to be located closer to his girlfriend in Telluride, Colorado. Claimant found new employment in Telluride, but he was subsequently laid off from that position.

¶ 3 Claimant then sought unemployment insurance benefits. A deputy for the division of unemployment insurance denied claimant's request for benefits based on his employment with Destination Vail Hotel. It is not disputed, however, that claimant received unemployment benefits based on his work for the Telluride employer.

¶ 4 Claimant appealed, and following an evidentiary hearing, the hearing officer affirmed the deputy's decision. The hearing officer found that claimant voluntarily quit his employment with Destination Vail Hotel to be closer to his girlfriend. The hearing officer rejected claimant's arguments that he was entitled to benefits from Destination Vail Hotel because he was not at fault for losing his subsequent job. Consequently, the hearing officer concluded that claimant was at fault for his separation from Destination Vail Hotel and disqualified him from receiving benefits from this employer under section 8–73–108(5)(e)(IV).

¶ 5 Claimant appealed the hearing officer's decision to the Panel, which affirmed upon review. The Panel concluded that claimant's separation from the subsequent employer was not relevant to the issue of his separa-

tion from Destination Vail Hotel. The Panel noted that each separation from a base period employer must be individually adjudicated in order to determine a claimant's entitlement to benefits attributable to that employment. Therefore, because claimant did not contest that he left his job with Destination Vail Hotel for personal reasons, the Panel upheld the hearing officer's decision.

¶ 6 Claimant now brings this appeal.

## II. Standard of Review

¶ 7 We may set aside the Panel's decision if the findings of fact do not support the decision or the decision is erroneous as a matter of law. *See* § 8–74–107(6), C.R.S. 2014; *Colo. Div. of Emp't & Training v. Parkview Episcopal Hosp.*, 725 P.2d 787, 790 (Colo. 1986).

## III. Discussion

### A. Fault

¶ 8 Claimant first contends that the Panel's decision is inconsistent with the express purpose of the Colorado Employment Security Act (CESA), which is to provide unemployment benefits to persons who are unemployed through no fault of their own. Claimant argues that the wages attributable to his employment with Destination Vail Hotel should be included in determining the amount of his unemployment benefits because he was not at fault for the separation from his subsequent employer. We disagree.

¶ 9 In construing a statute, we ascertain and effectuate the General Assembly's intent by applying the plain meaning of the statutory language, giving consistent effect to all parts of a statute, and construing each provision in harmony with the overall statutory design. *Found. for Human Enrichment v. Indus. Claim Appeals Office*, 2013 COA 175, ¶ 14, 339 P.3d 1046. We review the Panel's interpretation of a statute de novo. *Hoskins v. Indus. Claim Appeals Office*, 2014 COA 47, ¶ 13, 327 P.3d 356.

¶ 10 As claimant notes, section 8–73–108(1)(a) provides as a guiding principle in granting an award of benefits that "unemployment insurance is for the benefit of persons unemployed through no fault of their own; and that each eligible individual who is unemployed through no fault of his own shall be entitled to receive a full award of benefits."

¶ 11 However, this statute then provides:

[E]very person has the right to leave any job for any reason, but that the circumstances of his separation shall be considered in determining the amount of benefits he may receive, and that certain acts of individuals are the direct and proximate cause of their unemployment, and such acts may result in such individuals receiving a disqualification.

*Id.*

¶ 12 And, as pertinent here, section 8–73–108(3)(a) specifically provides that "[t]he most recent separation and *all separations from base period employers* ... shall be considered." (Emphasis added.) This principle is buttressed by section 8–73–108(5)(g) which explains how the adjudication of different separations from employment affects the payment of benefits.

¶ 13 An apparent purpose of adjudicating each separation is to prevent the "depletion of the insurance fund account of the past employer who in no way contributed to the job separation of the worker who voluntarily separates under conditions of disqualification." *Harding v. Indus. Comm'n*, 183 Colo. 52, 61, 515 P.2d 95, 100 (1973). As the court in *Harding* noted:

It is not unreasonable to protect an employer's account, established for the express purpose of supporting employees during periods of involuntary unemployment, from diversion to former employees who brought about their unemployment by their voluntary acts. A different rule would be inequitable, unjust and contrary to the expressed purposes of the [CESA].

*Id.* at 61–62, 515 P.2d at 100.

¶ 14 Contrary to claimant's contention, all separations from base period employers must be individually considered in determining a claimant's entitlement to benefits. *See Debalco Enters., Inc. v. Indus. Claim Appeals Office*, 32 P.3d 621, 623 (Colo. App. 2001) (citing § 8–73–108(3)(a)). Consequent-

ly, the hearing officer did not err in refusing to consider the circumstances of claimant's subsequent separation from employment in determining whether he was entitled to unemployment benefits from Destination Vail Hotel. *See id.* ("Whether a claimant is entitled to unemployment benefits attributable to wages paid by a particular employer depends upon the reason for the separation from that employment.").

¶ 15 Therefore, because it was undisputed that claimant voluntarily quit his employment with Destination Vail Hotel, and, thus, was at fault for that separation, we conclude that the hearing officer and the Panel did not err in determining that he was disqualified from receiving benefits from that employer under section 8–73–108(5)(e)(IV).

### B.   Section 8–73–108(4)(n)

¶ 16 Claimant next contends that under section 8–73–108(5)(e)(IV) a person may still be entitled to benefits if the reason for the move fell within one of the circumstances provided for in section 8–73–108(4). Claimant argues that section 8–73–108(4)(n) specifically recognizes the right to quit employment without being disqualified from receiving benefits so long as quitting would not result in a denial of benefits under section 8–73–108(5)(b). Claimant contends that section 8–73–108(5)(b), in turn, provides that a claimant will be denied benefits only if the claimant has refused suitable work at any relevant time after being laid off.

¶ 17 However, as we recognized above, the hearing officer properly limited the proceeding to the circumstances surrounding claimant's reasons for leaving Destination Vail Hotel, not his subsequent employer. Section 8–73–108(5)(b) pertains to the refusal to accept suitable work after the last separation. Consequently, there is no indication that it would apply to claimant's separation from Destination Vail Hotel.

¶ 18 Thus, we conclude that section 8–73–108(4)(n) does not provide a basis for awarding benefits to claimant based on his employment with Destination Vail Hotel.

### C.   Section 8–73–108(3)(d)

¶ 19 Claimant also argues that section 8–73–108(3)(d) limits when a disqualification or reduction in benefits can be imposed under the circumstances presented here. We decline to address this argument because claimant did not raise it before the Panel. *See QFD Accessories, Inc. v. Indus. Claim Appeals Office,* 873 P.2d 32, 33–34 (Colo. App. 1993) (declining to address arguments not raised before the Panel).

### D.   Section 8–73–102(1)

¶ 20 Claimant further argues that, under section 8–73–102(1), C.R.S. 2014, benefits are to be calculated based upon wages for insured work and that the work he performed for each employer was insured work. He asserts that because there is no provision permitting wage credits for insured work to be removed from the calculation formula under the facts of this case, he should also receive unemployment benefits based on his work for Destination Vail Hotel. However, there is no indication that claimant did not receive wage credits for the work he performed for both employers. Rather, the hearing officer determined that he was not entitled to benefits based on the credits he earned while working for Destination Vail Hotel because he left for personal reasons. *See* § 8–73–108(5)(e)(IV). Consequently, we conclude that section 8–73102(1) does not provide grounds for claimant to receive an award of unemployment benefits from Destination Vail Hotel.

### E.   Constitutional Right to Travel

¶ 21 Finally, claimant contends that the hearing officer's application of the CESA violates his right to travel as protected by the Privileges and Immunities Clause of the United States Constitution and article II, section 3 of the Colorado Constitution. We disagree.

#### 1.   Legal Framework

¶ 22 The United States Constitution protects the right to interstate travel. *See Shapiro v. Thompson,* 394 U.S. 618, 629–30 & n. 8, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), *overruled in part on other grounds by Edelman*

*v. Jordan,* 415 U.S. 651, 671, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Robertson v. City & Cnty. of Denver,* 874 P.2d 325, 340 (Colo. 1994) (noting that the right to interstate travel is a fundamental right). Nothing regarding the hearing officer's application of the CESA affected claimant's right to interstate travel. *Cf. Shapiro,* 394 U.S. at 631, 89 S.Ct. 1322 (statute denying welfare assistance to residents who had not resided within jurisdiction for at least a year was unconstitutional); *Jeffrey v. Colo. State Dep't of Soc. Servs.,* 198 Colo. 265, 269, 599 P.2d 874, 877 (1979) (denial of old-age pension benefits based on durational residency requirements violated fundamental right to travel). Rather, at most, it only affected his right to intrastate travel. *See Mayo v. Nat'l Farmers Union Prop. & Cas. Co.,* 833 P.2d 54, 58 (Colo. 1992) (noting cases involving state action that directly inhibited right to travel intrastate); *People in Interest of J.M.,* 768 P.2d 219, 221 (Colo. 1989) (the right of freedom of movement is a basic value protected by article II, section 3 of the Colorado Constitution); *People v. Allman,* 2012 COA 212, ¶ 8 n. 1, 321 P.3d 557 ("The parameters of the right to intrastate travel are less developed under United States Supreme Court and Colorado law.").

### 2. Analysis

¶ 23 Claimant argues that section 8–73–108(5)(e)(IV) violates his constitutional right to travel because it effectively penalizes his right to move within the state. As presented by claimant, we construe his argument to be an "as applied" rather than a "facial" challenge to the constitutionality of section 8–73–108(5)(e)(IV). *See Pepper v. Indus. Claim Appeals Office,* 131 P.3d 1137, 1139 (Colo. App. 2005) (noting differences between an "as applied" and "facial" challenge to a statute), *aff'd on other grounds sub nom. City of Florence v. Pepper,* 145 P.3d 654 (Colo. 2006).

¶ 24 We begin our analysis with the presumption that section 8–73–108(5)(e)(IV) is constitutional. *See id.* To succeed on an "as applied" challenge, a party must show that the statute is unconstitutional under the circumstances in which the party acted. *Sanger v. Dennis,* 148 P.3d 404, 410 (Colo. App.

2006). We review an as-applied challenge to the constitutionality of a statute de novo. *Hinojos–Mendoza v. People,* 169 P.3d 662, 668 (Colo. 2007).

¶ 25 The question we must first determine is whether section 8–73–108(5)(e)(IV), as applied to claimant here, interferes with the exercise of his constitutional right to travel. *See Allman,* ¶ 8; *J.M.,* 768 P.2d at 221. We conclude there is no such interference here.

¶ 26 In analyzing whether a statute interferes with a party's exercise of a fundamental right, the courts have looked at the significance of the interference. *Compare Zablocki v. Redhail,* 434 U.S. 374, 388, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (since the means selected by the State for achieving its interests unnecessarily impinge on the right to marry, a fundamental right, the statute cannot be sustained), *with Califano v. Jobst,* 434 U.S. 47, 54–55, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (upholding constitutionality of statute that denied benefits to a claimant who married a person who was not entitled to benefits under the same statute). In general, the statute must have more than an incidental effect on the ability to exercise that right. *See Jobst,* 434 U.S. at 58, 98 S.Ct. 95 (recognizing that the statutory provisions "may have an impact on a secondary beneficiary's desire to marry, and may make some suitors less welcome than others.").

¶ 27 In Colorado, the supreme court addressed whether a statute authorizing household exclusion clauses in automobile insurance policies violated the fundamental right to travel. *See Mayo,* 833 P.2d at 56–57. The court concluded that neither the household exclusion clause nor the statute upon which it was based adversely affected the fundamental right to travel in a constitutionally significant sense. *Id.* at 59.

¶ 28 The court noted that the Mayos could travel both interstate and intrastate without limitation and that the household exclusion clause, at most, denied the Mayos insurance coverage for claims against each other when they drive their cars. *Id.* Consequently, the court concluded that while it may inhibit their decisions to travel together by automobile, it imposed no constraint on separate

travel by automobile or joint or separate travel by other means. *Id.*

¶ 29 Similarly, we conclude that section 8–73–108(5)(e)(IV) does not prevent a person from moving either interstate or intrastate. Rather, it precludes a claimant from receiving unemployment benefits only when the claimant quits to move to another area as a matter of personal preference. We note that other CESA provisions permit an award of benefits if a claimant moves to another area when, among other things, a spouse is transferred, a spouse is killed in combat, or there is illness in the family. *See* § 8–73108(4)(s) to –108(4)(v).

¶ 30 Like the court in *Mayo*, we thus conclude that section 8–73–108(a)(IV), as applied to claimant here, does not adversely affect the fundamental right to travel in a constitutionally significant sense. Conditioning governmental payments of monetary benefits upon a showing that claimant has not caused his own unemployment has, at most, only an incidental effect on claimant's right to travel. To the contrary, the very ability of claimant to quit and travel to another location and find a job demonstrates the lack of interference with this right. While claimant's decision to quit his job to move closer to his girlfriend is certainly understandable, the loss of benefits resulting from this decision is not a constitutionally significant restriction. Clearly, it does not involve the type of "invidious classification" the supreme court has held violates the right to travel. *See Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 269, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) ("Arizona durational residence requirement for eligibility for nonemergency free medical care creates an 'invidious classification' that impinges on the right of interstate travel by denying newcomers 'basic necessities of life.' "); *Shapiro*, 394 U.S. at 627, 631–32, 89 S.Ct. 1322 (statutory provision denying welfare assistance to residents of less than a year creates a classification which constitutes an "invidious discrimination" that violates the constitutional right to travel).

¶ 31 Therefore, we conclude that, although section 8–73–108(5)(e)(IV) penalizes certain claimants who voluntarily quit to move to another area, the effect on the right to travel is a secondary impact and does not render the statute unconstitutional as applied in this case. *See Jobst*, 434 U.S. at 58, 98 S.Ct. 95; *Mayo*, 833 P.2d at 59–60.

¶ 32 This conclusion is consistent with several other jurisdictions that have considered this issue. *See Pyeatt v. Idaho State Univ.*, 98 Idaho 424, 565 P.2d 1381, 1382–83 (1977) (denial of claim for unemployment benefits when person voluntarily left employment did not violate person's constitutional right to travel); *Wadlington v. Mindes*, 45 Ill.2d 447, 259 N.E.2d 257, 262–63 (1970) (statute precluding award of unemployment benefits when worker moved to area that lacked job opportunities did not violate the right to travel); *Jenkins v. Whitfield*, 505 So.2d 83, 87 (La.Ct.App.1987) (denial of benefits for worker who left job for a better job did not impose restrictions on the rights of interstate or intrastate travel); *Robinson v. Young Men's Christian Ass'n*, 123 Mich.App. 442, 333 N.W.2d 306, 308 (1983) (restriction on award of benefits for an employee who quit to accept noncovered out-of-state employment did not impinge upon employee's right to travel); *see also Norman v. Unemployment Ins. Appeals Bd.*, 34 Cal.3d 1, 192 Cal.Rptr. 134, 663 P.2d 904, 905 (1983) (holding that denial of unemployment compensation benefits to claimant who voluntarily terminated employment to follow nonmarital loved one does not violate claimant's right to privacy or freedom of association).

¶ 33 Therefore, we conclude that the denial of claimant's request for benefits does not violate his right to travel as protected by the United States Constitution or article II, section 3 of the Colorado Constitution.

#### IV. Conclusion

¶ 34 The Panel's order is affirmed.

Plank·* and Ney*, JJ., concur.

---

* Sitting by assignment of the Chief Justice under

provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2014.